No. 05-671

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 286

_____

DORIS JEAN RUSSELL,

           Plaintiff and Appellant,

    v.

MASONIC HOME OF MONTANA, INC.,

           Defendant and Respondent.

_____

APPEAL FROM:    District Court of the First Judicial District,
                In and for the County of Lewis and Clark, Cause No. BDV-2005-358,
                The Honorable Jeffrey M. Sherlock, Presiding Judge.

COUNSEL OF RECORD:

        For Appellant:

        Brenda Lindlief Hall, Reynolds, Motl & Sherwood, Helena, Montana

        For Respondent:

        Steven J. Lehman, Crowley, Haughey, Hanson, Toole & Dietrich,
        Billings, Montana

_____

           Submitted on Briefs:  September 20, 2006

                Decided:  November 8, 2006

Filed:

_____
                Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Respondent Masonic Home of Montana (Masonic) employed Appellant Doris Jean Russell (Russell) as administrative assistant to Gale Evans (Evans). Russell brought a claim against Masonic for wrongful discharge from employment pursuant to the Wrongful Discharge from Employment Act (WDEA), Title 39, Chapter 2, Part 9, MCA. The District Court for the First Judicial District, Lewis and Clark County, granted summary judgment in Masonic's favor on the grounds that Russell failed to comply with Masonic's grievance policy before instituting her WDEA suit. Russell appeals and we affirm.

¶2 Russell presents the following issues on appeal:

¶3 1. Did the District Court properly grant summary judgment in Masonic's favor?

¶4 2. Does § 39-2-911(2), MCA, violate article II, section 16 of the Montana Constitution, by not requiring Masonic to inform Russell that she must exhaust internal grievance procedures before instituting a wrongful discharge suit?

FACTS AND PROCEDURAL HISTORY

¶5 Russell worked for Masonic from November 2001 until December 2004. During that time, Russell worked with Evans as an administrative assistant. Russell acted as the administrator during a week in June 2004 while Evans was on vacation. Russell claimed that numerous employees expressed dissatisfaction during this week over working conditions, staff shortages, and the high employee turnover rate. Masonic's personnel consultant met with Russell and Evans after Evans returned from vacation to discuss these issues.

2

¶6     Russell contends that she and other workers noted that Evans began delegating Russell's duties to other employees after the meeting, that Evans shunned Russell, and that Evans acted openly hostile to Russell. Russell and Evans met on other occasions with the personnel consultant to discuss the ongoing conflict. Russell resigned on December 10, 2004, claiming that Evans had created an intolerable work environment. Russell stated in her resignation letter that filing a grievance would be pointless because Masonic's grievance policy provided that the very same administrator who forced her discharge, Evans, would rule on the grievance.

¶7     Evans mailed Russell an acceptance of her resignation on December 14, 2004, and included a copy of Masonic's "Employee Complaint Resolution Procedure" (Policy) that outlined the grievance process. Evan's letter did not inform Russell that she needed to comply with the Policy before filing a wrongful discharge action.

¶8     Russell alleged wrongful discharge by Masonic in an action that she filed on June 3, 2005. Russell claimed that Masonic constructively discharged her as a result of Evans's disparaging treatment. Masonic moved for summary judgment on the grounds that the WDEA requires that Russell exhaust Masonic's internal grievance procedures before filing suit and that Russell did not comply with Masonic's Policy. The District Court granted summary judgment in Masonic's favor. Russell appeals and we affirm.

STANDARD OF REVIEW

¶9     We review a district court's grant of summary judgment *de novo*, using the standard established by M. R. Civ. P. 56. The moving party must establish the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Haynes v. Shodair Children's Hosp.*, 2006 MT 128, ¶ 8, 332 Mont. 286, ¶ 8, 137 P.3d 518, ¶ 8.

3

Once a moving party has met its burden, the opposing party must present substantial evidence essential to one or more elements of its case in order to raise a genuine issue of material fact. We review a district court's conclusions of law to determine whether they are correct. *Haynes*, ¶ 8 (internal citation omitted).

ISSUE ONE

¶10 *Did the District Court properly grant summary judgment in Masonic's favor?*

¶11 Russell argues that Masonic's Policy permitted an aggrieved employee to file a written grievance, but was permissive not mandatory. She also argues that filing a written grievance would have been futile because the Policy provided that the administrator, Evans, reviewed and issued decisions on grievances.

¶12 The WDEA provides the exclusive remedy for a wrongful discharge from employment and sets forth certain rights and remedies with respect to wrongful discharge claims. Section 39-2-902, MCA. The WDEA provides that "[i]f an employer maintains written internal procedures . . . under which an employee may appeal a discharge within the organizational structure of the employer, the employee shall first exhaust those procedures prior to filing an action under this part." Section 39-2-911(2), MCA. We have held that a party's failure to exhaust such an internal process constitutes a complete bar to pursuing a claim under the WDEA. *Haynes*, ¶ 14 (citing *Offerdahl v. State, D.N.R.*, 2002 MT 5, ¶ 20, 308 Mont. 94, ¶ 20, 43 P.3d 275, ¶ 20).

¶13 Russell claims that the language in Masonic's Policy led her to believe that filing a written grievance was discretionary. Russell points to the language in the Policy that informs an employee that if they believe informal discussions fail to resolve the problem, the employee "*may* file a written complaint using the formal procedure described below."

4

This language does not relieve Russell, however, from complying with the mandatory requirement to exhaust the internal grievance policy pursuant to § 39-2-911(2), MCA. We discussed the word "may" in the context of collective bargaining agreements with similar structure and content as Masonic's Policy and found that "may" referred to the employee's choice either to file a grievance or to "not file and let the matter drop." *MacKay v. State*, 2003 MT 274, ¶ 23, 317 Mont. 467, ¶ 23, 79 P.3d 236, ¶ 23.

¶14    We explained that this language meant that if an employee chooses to seek a remedy, she may do so first by filing a formal written grievance, not that an employee is excused from exhausting her administrative remedies before filing suit. *MacKay*, ¶ 23. Masonic met its statutory duty to provide Russell with a copy of the Policy and complaint form within seven days of receiving her resignation letter as required by the WDEA. Section 39-2-911(3), MCA.  The District Court correctly concluded that Russell's failure to exhaust Masonic's administrative procedures barred her WDEA claim. *Haynes*, ¶ 17.

¶15    Russell argues next that exhausting Masonic's Policy would have proven futile because the policy provided that Evans, the person responsible for the wrongful discharge, issue the final decision.  Russell claims that we should waive exhaustion under these circumstances.  The possibility of an adverse decision does not mean, however, that pursuing an administrative process would be futile. *Mountain Water Co. v. DPSR*, 2005 MT 84, ¶ 16, 326 Mont. 416, ¶ 16, 110 P.3d 20, ¶ 16.  We affirmed the dismissal of Mountain Water Company's (MWC) complaint on the grounds that it did not exhaust its administrative remedies through the Department of Environmental Quality and the Public Safety Commission.   MWC did not attempt to institute a proceeding with either administrative agency on the grounds that they might render conflicting opinions.

5

*Mountain Water Co.*, ¶ 15. We determined that the mere possibility of an adverse outcome did not excuse MWC from complying with the administrative remedy process. *Mountain Water Co.*, ¶ 16.

¶16 Russell failed to initiate a formal grievance based on her speculation that Evans would rule on the case against her. Although the policy provides for the administrator to issue a decision on the matter, the policy also provides that the administrator may designate another person to investigate the dispute. The mere possibility of an adverse decision does not render the process futile and does not excuse Russell from complying with the Policy before instituting her suit. *Mountain Water Co.*, ¶ 16.

¶17 Russell also claims that Masonic provided her with the Policy only and failed to provide her with the more applicable "Separation and Termination" policy. She claims that the Policy did not apply to her because she had already quit. In *Haynes*, we rejected this type of argument as "both circular and unavailing." *Haynes*, ¶ 16. We stated that the exhaustion requirement still applied to an employee claiming constructive discharge. *Haynes*, ¶ 17. Although Masonic did have two separate policies, Evans provided Russell with the appropriate grievance policy and Russell failed to exhaust as required by the WDEA. We affirm the District Court's grant of summary judgment in Masonic's favor.

ISSUE TWO

¶18 *Does § 39-2-911(2), MCA, violate article II, section 16 of the Montana Constitution, by not requiring Masonic to inform Russell that she must exhaust internal grievance procedures before instituting a wrongful discharge suit?*

¶19 Russell claims that the WDEA violates her fundamental right to access the courts as provided in article II, section 16 of the Montana Constitution, by not requiring

6

employers to notify their employees that failure to exhaust an internal grievance policy bars the employee from bringing a WDEA claim in court. Masonic argues that Russell's failure to comply with M. R. App. P. 38 precludes us from hearing Russell's constitutional claim.

¶20    M. R. App. P. 38 requires that in cases where the state is not a party, the party raising a constitutional issue must "give notice to the supreme court and to the Montana attorney general of the existence of the constitutional issue." This written notice shall be given "contemporaneously with filing of the notice of appeal." M. R. App. P. 38. Failure to file a notice of a constitutional challenge contemporaneously with a notice of appeal results in an appellant failing to "procedurally comply with an essential condition precedent, thus precluding this Court from reaching the constitutional challenge." *Boettcher v. Montana Guar. Fund*, 2006 MT 127, ¶ 10, 332 Mont. 279, ¶ 10, 140 P.3d 474, ¶ 10.

¶21    We reached similar results in *Haider v. Frances Mahon Deaconess Hosp.*, 2000 MT 32, 298 Mont. 203, 994 P.2d 1121, and *Weinert v. City of Great Falls*, 2004 MT 168, 322 Mont. 38, 97 P.3d 1079. In *Haider*, the appellant filed its notice of appeal on May 10, 1999, but did not file a notice of constitutional challenge until August 5, 1999. We concluded that the appellant's failure to file its notice of constitutional challenge contemporaneously with its notice of appeal, as required by M. R. App. P. 38, precluded us from addressing the constitutional challenge. *Haider*, ¶¶ 8, 12. The appellant in *Weinert* filed a notice of constitutional challenge with the Attorney General at the district court level as required by M. R. Civ. P. 24(d). The appellant failed to file a similar notice of constitutional challenge, however, contemporaneously with her notice of appeal. We

7

held that appellant's failure to comply with M. R. App. P. 38 prevented us from addressing the constitutional challenge. *Weinert*, ¶ 17.

¶22   Russell filed her notice of appeal on October 7, 2005, but did not file her notice to the Attorney General until more than three months later on January 26, 2006. Russell's failure to file her notice to the Court and to the Attorney General contemporaneously with her notice of appeal precludes us from addressing her constitutional claim. *Boettcher*, ¶ 12.

¶23   Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JIM RICE

8