DA 09-0330

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 24

LANCE McKINNON,

      Plaintiff and Appellant,

  v.

WESTERN SUGAR COOPERATIVE
CORPORATION,

      Defendant and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDV 07-111
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            James P. Carey and Micheal F. Lamb, Lamb & Carey, Helena, Montana
Victor R. Halverson, Halverson, Sheehy & Plath, P.C., Billings, Montana
Jon M. Moyers, Moyers Law, P.C., Billings, Montana

        For Appellee:

            Chad E. Adams and Leo S. Ward, Browning, Kaleczyc, Berry & Hoven,
P.C., Helena, Montana

                Submitted on Briefs:  November 4, 2009

                        Decided:  February 5, 2010

Filed:

            _____
                       Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Lance McKinnon (McKinnon) appeals an order of the First Judicial District Court, Lewis and Clark County, dismissing his complaint for failure to state a claim and denying his constitutional challenge based on McKinnon's failure to notify the Attorney General's office. We reverse.

¶2 We review the following issues on appeal:

¶3 *Did the District Court correctly dismiss McKinnon's intentional injury claim for failure to state a claim?*

¶4 *Did the District Court correctly apply M. R. Civ. P. 24(d) when it dismissed McKinnon's constitutional challenge?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 A railcar traumatically amputated both of McKinnon's legs while he was working for Western Sugar Cooperative Corporation (Western Sugar) on February 15, 2005. McKinnon received workers' compensation benefits for his injury.

¶6 McKinnon filed his original complaint on February 9, 2007, in which he sought to circumvent the exclusivity provision of the Workers' Compensation Act. Section 39-71-411, MCA. McKinnon initially did not serve Western Sugar. McKinnon alleged in his complaint that Western Sugar had engaged in inherently dangerous, ultra-hazardous work practice and had violated its non-delegable duty to provide a safe workplace. McKinnon claimed that Western Sugar's actions had proximately caused his injuries.

¶7 This Court issued its opinion in *Brady v. PPL Montana*, 2008 MT 177, 343 Mont. 405, 185 P.3d 330, after McKinnon had filed his complaint. *Brady* came to this Court with

2

an incomplete factual record on a certified question pursuant to M. R. App. P. 44 from the U.S. Court of Appeals for the Ninth Circuit. We declined in *Brady* to address the constitutionality of the Workers Compensation exclusivity provision in a "factual vacuum." *Brady*, ¶ 6.

¶8 McKinnon amended his complaint in light of *Brady* to include a constitutional challenge to § 39-71-413, MCA. McKinnon filed his first amended complaint on July 18, 2008. McKinnon specifically alleged that Western Sugar's conduct met the statutory exception to Workers' Compensation exclusivity. McKinnon also argued that § 39-71-413, MCA, was unconstitutional both on its face and as applied to him.

¶9 McKinnon timely served Western Sugar on September 12, 2008. Western Sugar filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim on October 1, 2008. McKinnon served the Attorney General with a copy of his first amended complaint on October 7, 2008. The Attorney General acknowledged receipt of service on October 10, 2008. The Attorney General did not file a motion to intervene.

¶10 The District Court granted Western Sugar's motion to dismiss on all counts following oral argument. The court specifically found that McKinnon's claims did not fit within the statutory exception to Workers' Compensation exclusivity. The court also dismissed with prejudice McKinnon's constitutional challenges for failing to provide the Attorney General with notice at the time that he had filed his first amended complaint and before he had served Western Sugar.

¶11 McKinnon filed a notice of appeal on June 4, 2009. McKinnon notified the Attorney General of his appeal on the same date. The Attorney General filed notice of its intent to

3

intervene on June 29, 2009. Western Sugar moved to dismiss McKinnon's substantive constitutional challenges. This Court granted Western Sugar's motion to the extent that the appeal would be limited to the procedural issue of whether the District Court correctly interpreted M. R. Civ. P. 24(d). McKinnon concurred. The Attorney General withdrew its notice of intervention.

## STANDARD OF REVIEW

¶12 We construe a complaint in the light most favorable to the plaintiffs when reviewing an order dismissing a complaint under M. R. Civ. P. 12(b)(6). *Jones v. Mont. Univ. Sys.*, 2007 MT 82, ¶ 15, 337 Mont. 1, 155 P.3d 1247. A court should not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Jones*, ¶ 15. A district court's determination that a complaint failed to state a claim presents a conclusion of law. *Jones*, ¶ 15. We review for correctness a district court's conclusions of law. *Jones*, ¶ 15.

## DISCUSSION

¶13 *Did the District Court correctly dismiss McKinnon's intentional injury claim for failure to state a claim?*

¶14 The District Court determined that McKinnon had failed to state a claim under the exception to the Workers' Compensation exclusivity provision set forth at § 39-71-413, MCA. The court agreed with Western Sugar that McKinnon had alleged no injury caused by "an intentional and deliberate act" on the part of Western Sugar. Section 39-71-413, MCA. The District Court found that McKinnon had set forth merely a series of allegations that Western Sugar had failed to ensure a safe workplace. The court determined that "without

4

using the word negligence, McKinnon has alleged a negligence claim against Western Sugar." The court further determined that McKinnon had failed to state a claim under § 39-71-413, MCA, in light of McKinnon's failure to allege "an intentional and deliberate act" on the part of Western Sugar.

¶15 Western Sugar argues that *Wise v. CNH Am., LLC*, 2006 MT 194, 333 Mont. 181, 142 P.3d 774, provides the standard for dismissal in McKinnon's case. We held in *Wise* that the plaintiff's failure to allege anything more than ordinary negligence proved insufficient to satisfy the requirements of § 39-71-413, MCA. We rejected Wise's arguments that he needed to allege only actions that would have constituted "intentional and malicious" conduct in order to satisfy the statutory requirement. *Wise*, ¶ 9. We noted that the 2001 amendment to § 39-71-413, MCA, specifically had replaced "malicious" with "deliberate." *Wise*, ¶ 11; § 39-71-413, MCA. The legislature also had defined an "intentional injury" as one "caused by a deliberate act with the specific intent of causing an injury." *Wise*, ¶ 11; § 39-71-413(3), MCA. We concluded in *Wise* that following the amendment of § 39-71-413, MCA, "an employee now must allege that he or she has been intentionally injured by the intentional act of an employer or fellow employee in order to avoid the exclusivity provision of the Workers' Compensation Act." *Wise*, ¶ 11.

¶16 Wise had alleged only that his employer negligently failed to provide safe working conditions and negligently failed to comply with state and federal regulations. *Wise*, ¶ 12. Wise made no allegation that the employer had acted intentionally or deliberately. *Wise*, ¶ 12. Wise claimed merely that the specific allegations of negligence in his claim satisfied the pleading requirement by constituting "intentional and deliberate" conduct on the part of

5

his employer. *Wise*, ¶ 12. Wise never made the connection of how the alleged negligence constituted intentional and deliberate conduct on the part of his employer. McKinnon's claim, by contrast, alleges specific intentional and deliberate acts on the part of Western Sugar. McKinnon claims that Western Sugar's conduct constituted an "intentional and deliberate act of engaging in an ongoing policy and practice of moving railcars in an uncontrolled manner, without necessary safety equipment."

¶17 McKinnon asserts that his claim sufficiently alleged an intentional act to survive scrutiny under M. R. Civ. P. 12(b)(6). McKinnon claims that he was not allowed to develop the record through discovery sufficiently to establish the facts necessary to prove his claims. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." M. R. Civ. P. 8(a). Our cases reflect the principle that liberal rules of pleading allow for compliance with the spirit and intent of the law rather than a rigid adherence to formula or specific words. *See R.H. Schwartz Constr. Specialties v. Hanrahan*, 207 Mont. 105, 672 P.2d 1116 (1983). This Court also has determined that further discovery may constitute an appropriate remedy for lack of specificity in a complaint. *Willson v. Taylor*, 194 Mont. 123, 128, 634 P.2d 1180, 1183 (1981). This determination reflects the principle that " '[t]his Court does not favor the short circuiting of litigation at the initial pleading stage unless a complaint does not state a cause of action under any set of facts.' " *Willson*, 194 Mont. at 128, 634 P.2d at 1183 (quoting *Tobacco River Lbr. Co. v. Yoppe*, 176 Mont. 267, 271, 577 P.2d 855, 857 (1978)).

¶18 McKinnon specifically alleges that Western Sugar's conduct fit within the exception to Workers' Compensation exclusivity at § 39-71-413, MCA. McKinnon further alleges that

6

Western Sugar's conduct in regularly moving railcars in an uncontrolled manner without proper safety equipment was intentional and deliberate. McKinnon points out that Western Sugar relies primarily on this Court's interpretation of the pre-2001 statutory provision. McKinnon asserts that our holding in *Brady* indicates that the 2001 amendment to § 39-71-413, MCA, has yet to be interpreted comprehensively by this Court.

¶19 *Wise* requires that a plaintiff allege facts sufficient to establish deliberate acts by the employer intended to cause injury to the employee. *Wise*, ¶ 11. McKinnon alleges that Western Sugar's practice of moving railcars without proper safety procedures or equipment constituted deliberate conduct. McKinnon further alleges that his severe injury was a certain outcome of this practice. Thus, McKinnon claims that his injury represents the intended outcome of Western Sugar's deliberate acts.

¶20 McKinnon's appeal presents the initial question of whether his complaint alleges conduct sufficient to establish intentional and deliberate conduct that would satisfy the exception to the exclusivity provision of the Workers' Compensation Act. The Dissent characterizes McKinnon's pleading as a negligence claim masquerading as an allegation of intentional injury. This argument attenuates the basic principles underlying the concept of notice pleading and denies McKinnon the opportunity to develop the record through discovery. We cannot say beyond doubt that McKinnon can prove no set of facts in support of his claim that would entitle him to relief under these circumstances. *Jones*, ¶ 15. At a minimum, the District Court should have afforded McKinnon the opportunity to develop the record through discovery to attempt to show intentional and deliberate action on the part of Western Sugar. *Willson*, 194 Mont. at 128, 634 P.2d at 1183. McKinnon's claim may fail at

7

the summary judgment stage if he fails through further discovery to establish sufficient evidence to support his allegations.

¶21 *Did the District Court correctly apply M. R. Civ. P. 24(d) when it dismissed McKinnon's constitutional challenge?*

¶22 The District Court concluded that McKinnon had failed to provide the Attorney General notice of his constitutional challenge at the time that he filed his first amended complaint in compliance with M. R. Civ. P. 24(d). Rule 24(d) requires a party raising a constitutional issue where the State is not a party to notify the Attorney General "contemporaneously with the filing of the pleading or other document in which the constitutional issue is raised." M. R. Civ. P. 24(d).

¶23 McKinnon filed his first amended complaint on July 18, 2008. He served the complaint on Western Sugar on September 11, 2008. McKinnon served and notified the Attorney General on October 7, 2008. The Attorney General's office acknowledged notice of the complaint on October 10, 2008. The Attorney General did not appear or seek to intervene before the District Court's May 7, 2009, order granting Western Sugar's motion to dismiss.

¶24 McKinnon claims that the District Court incorrectly dismissed with prejudice his constitutional challenges. McKinnon argues that no authority exists on which to predicate such a dismissal, especially in light of the fact that the Attorney General had acknowledged proper notification and had chosen not to intervene within the 20 day window allowed by Rule 24(d).

¶25 We previously have not had occasion to apply Rule 24(d). The District Court accepted Western Sugar's argument that it should apply our precedent under former M. R. App. P. 38. Rule 38, like M. R. Civ. P. 24(d), required a party challenging the constitutionality of a statute to file notice with the Attorney General "contemporaneously with the filing of the notice of appeal or with the filing of an original proceeding in the supreme court." M. R. App. P. 38 (1999).

¶26 We determined in *Russell v. Masonic Home of Mont., Inc.*, 2006 MT 286, 334 Mont. 351, 147 P.3d 216, that the appellant's failure to serve timely notice on the Attorney General for more than three months after filing a notice of appeal was a failure to "procedurally comply with an essential condition precedent, thus precluding this court from reaching the constitutional challenge." *Russell*, ¶ 20. McKinnon's case is distinguishable from *Russell*, notwithstanding the Dissent's arguments to the contrary.

¶27 Russell filed her notice of constitutional challenge with the Attorney General the same week that she filed her opening brief on appeal. Russell had neglected to file notice with the Attorney General under M. R. Civ. P. 24(d) in District Court. Russell's dilatory filing under M. R. App. P. 38 failed to provide the Attorney General with a meaningful opportunity to respond to the constitutional challenge. McKinnon filed his notice of constitutional challenge shortly after he served his amended complaint on Western Sugar. Neither party had engaged in discovery, filed any motions, or otherwise engaged in pretrial litigation by the time that McKinnon had notified the Attorney General of his constitutional challenge.

¶28 Requiring McKinnon to have served the Attorney General before serving the opposing party or developing his case through discovery does not further the purpose of M.

9

R. Civ. P. 24(d). The Rule intends to allow the Attorney General to intervene in a case where a party challenges the constitutionality of a statute. The Rule served its purpose here. The Attorney General could have intervened had it chosen to do so. The fact that no prejudice accrued to the Attorney General from McKinnon's allegedly late notice further illustrates that the purpose and spirit of the rule were not violated. The Dissent would have us apply the rule without regard to its intended purpose. This approach ignores the fact that "this Court has refused to abide by such a strict, formalistic approach to statutory interpretation and ha[s] readily applied the maxim 'The law respects form less than substance.'" *McKirdy v. Vielleux*, 2000 MT 264, ¶ 35, 302 MT 18, 19 P.3d 207 (quoting § 1-3-219, MCA).

¶29    McKinnon also argues that this Court held that substantial compliance with M. R. App. P. 38 proved sufficient where such compliance allowed the Attorney General an opportunity to respond to the constitutional challenge. *See U.S. Mfg. & Distrib. Corp. v. Great Falls*, 169 Mont. 298, 302, 546 P.2d 522, 524-25 (1976). We must agree with McKinnon based on the fact that the Attorney General acknowledged proper receipt of notice. M. R. Civ. P. 24(d) seeks to ensure that the Attorney General will have the chance to appear in the district court to defend the constitutionality of a statute in a case in which the State is not a party. Nothing prevented the Attorney General from participating in the litigation. The Attorney General's office acknowledged timely notice and declined to exercise its statutory right to intervene within 20 days.

¶30    We cannot determine that McKinnon's notice constituted a failure of a "condition precedent" as had been the case in *Russell*. McKinnon complied with the spirit of the rule

10

and no prejudice accrued to the Attorney General due to his allegedly late compliance. Our rules of civil procedure "place the spirit of the law above strict compliance with the letter of the law." *State Medical Oxygen & Supply v. American Medical Oxygen Co.*, 230 Mont. 456, 462, 750 P.2d 1085, 1089 (1988).

¶31    Reversed.

/S/ BRIAN MORRIS

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ JAMES C. NELSON


Justice Jim Rice, dissenting.

¶32    To state a claim under the exception to the exclusivity provision of the Workers' Compensation Act, a complaint must allege that an employer's or fellow employee's *intentional act* caused an *intentional injury*. Section 39-71-413(1), MCA (2003). Additionally, in order to challenge the constitutionality of the Workers' Compensation Act, a plaintiff must "contemporaneously" notify the Attorney General in writing of the constitutional claim, specifying the section of the code or chapter of the session law being challenged. M. R. Civ. P. 24(d) (2005). McKinnon complied with neither of these requirements. Despite that, the Court reverses both issues. I believe the District Court correctly dismissed McKinnon's complaint, and therefore dissent.

¶33    In reviewing the District Court's dismissal of the action, we construe the complaint in the light most favorable to the plaintiff. *Wise v. CNH America, LLC*, 2006 MT 194, ¶ 6, 333

11

Mont. 181, 142 P.3d 774. A complaint will survive a motion to dismiss only if it "put a defendant on notice of the facts that the plaintiff intends to prove; the facts must disclose the elements necessary to make the claim; and the complaint must demand judgment for relief sought by the plaintiff." *Wise*, ¶ 8 (citing *Kunst v. Pass*, 1998 MT 71, ¶ 35, 288 Mont. 264, 957 P.2d 1).

¶34 A fundamental tenet of the Workers' Compensation Act is the "exclusive" remedy it provides for work-related injuries. Section 39-71-411, MCA. A narrow exception to the Act's exclusivity is provided when "an employee is *intentionally injured* by an *intentional and deliberate act* of the employee's employer or . . . a fellow employee . . . ." Section 39-71-413(1), MCA (emphasis added). "Intentional injury" is defined as "an injury caused by an intentional and deliberate act that is *specifically and actually intended to cause injury* to the employee injured and there is actual knowledge that an injury is certain to occur." Section 39-71-413(3), MCA (emphasis added). Thus, to satisfy the exception, the statute clearly requires that both the *act* and the resulting *injury* be specifically and actually intended.[1]

_____

[1] The requirement of specific intent for both the act and the resulting injury is a high standard, but when viewed in its historical context, was one clearly intended by the Legislature. In 1971, this Court decided *Enberg v. Anaconda Co.*, 158 Mont. 135, 137, 489 P.2d 1036, 1037 (1971), requiring the pleading of an intentional injury in addition to an intentional act. The exclusivity statute then went through various revisions, *see e.g.* § 92-204, RCM (1973) and § 92-204.1, RCM (1977), before its recodification at § 39-71-413, MCA (1978). The 1978 version of the statute remained in effect until 2001, when it was revised in response to this Court's decision in *Sherner v. Conoco, Inc.*, 2000 MT 50, 298 Mont. 401, 995 P.2d 990, which concluded that the provision did not require an intent to cause the resulting injury. *See Sherner*, ¶¶ 38-39. In response, the Legislature amended the statute to require a specific intent for both the act and the resulting injury. SB 323, 57th Leg., Reg. Sess. (Apr. 12, 2001).

¶35    The Legislature's 2001 amendment was not lost upon this Court and, in 2006, we interpreted the statute to mean what it says, holding "[i]n order to state a claim under § 39-71-413, MCA, an employee must now allege that he or she has been *intentionally injured* by the *intentional act* of an employer or fellow employee in order to avoid the exclusivity provision of the Workers' Compensation Act." *Wise*, ¶ 12 (emphasis added).

¶36    Accepting the allegations of the complaint as true, Count I fails to allege either the element of an intentional act or an intentional injury. McKinnon alleges that: (1) Western Sugar had a "duty" to protect him; (2) Western Sugar "breach[ed]" that duty by failing to provide him with the appropriate "direction, supervision, training, and equipment;" (3) Western Sugar "caused Mr. McKinnon's injuries;" and (4) "Mr. McKinnon has sustained damages." Thus, McKinnon alleges breach of a duty by Western Sugar which caused him damages. As the District Court correctly recognized, "without using the word negligence, McKinnon has alleged a negligence claim against Western Sugar." *See e.g. Peterson v. Eichhorn*, 2008 MT 250, ¶ 23, 344 Mont. 540, 189 P.3d 615 (delineating the elements of negligence as duty, breach, cause, and damages) (citing *Wilden v. Neumann*, 2008 MT 236, ¶ 14, 344 Mont. 407, 189 P.3d 610; *Bonilla v. U. of Mont.*, 2005 MT 183, ¶ 14, 328 Mont. 41, 116 P.3d 823; *Massee v. Thompson*, 2004 MT 121, ¶ 30, 321 Mont. 210, 90 P.3d 394). The District Court correctly dismissed Count I for failure to state a claim under § 39-71-411, MCA, precisely as we did in *Wise*: "[The employer's] negligent conduct, viewed in a light most favorable to Wise, remains negligent conduct, and does not rise to the level of an intentional act specifically designed to cause an injury to Wise." *Wise*, ¶ 12 (citing § 39-71-413, MCA).

¶37 Count II likewise fails to state a claim for which relief may be granted. It restates the allegations of Count I and then adds the following assertions:

> [McKinnon] was injured by [Western Sugar's] intentional and deliberate act of engaging in an ongoing policy and practice of moving rail cars in an uncontrolled manner, without necessary safety equipment, when it knew or should have known that eventual severe injury to [McKinnon] was certain to occur—in that regard, a knowing or intended consequence of its intentional acts. [Western Sugar's] conduct in this regard caused Mr. McKinnon's injuries.
>
> As a direct result of the injuries caused by [Western Sugar's] conduct as described herein, Mr. McKinnon has sustained damages including past and future lost earnings and capacity; past and future medical expenses; past and future pain and suffering; past and future loss of enjoyment of life.

Taking these allegations as true, Count II asserts: (1) Western Sugar intentionally and deliberately engaged in an unsafe policy and practice of moving rail cars; (2) Western Sugar lacked appropriate safety equipment; (3) Western Sugar knew or should have known McKinnon would eventually be injured; and (4) McKinnon was injured.

¶38 Even under the lenient standards of notice pleading, McKinnon has failed to state a claim under § 39-71-413, MCA. McKinnon's assertion that Western Sugar intentionally and deliberately "engag[ed] in an ongoing policy and practice" arguably stated an intentional and deliberate *act* by Western Sugar and, construing the pleading in McKinnon's favor, I would accept it as such. However, fatal to McKinnon's claim is his failure to allege that Western Sugar also acted with the specific and actual intention to cause the *resulting injury* to McKinnon. McKinnon's complaint merely alleges that Western Sugar "knew or should have known McKinnon would eventually be injured," which treads nowhere near a claim that his injury was "caused by an intentional and deliberate act *that is specifically and actually*

14

*intended to cause injury to the employee injured*," as required by § 39-71-413(3), MCA (emphasis added).

¶39    *Larson's Workers' Compensation Law* explains regarding the allegations necessary to sustain such intentional claims:

> Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering employees to perform an extremely dangerous job, wilfully failing to furnish a safe place to work, wilfully violating a safety statute, failing to protect employees from crime, refusing to respond to an employee's medical needs and restrictions, or withholding information about worksite hazards, *the conduct still falls short of the kind of actual intention to injure that robs the injury of accidental character*.
>
> .   .   .
>
> If [the cases requiring an intent to harm as well as an intent to act] seem rather strict, one must remind oneself that what is being tested here is not the degree of gravity or depravity of the employer's conduct, but rather the narrow issue of the intentional versus the accidental quality of the precise event producing injury. *The intentional removal of a safety device or toleration of a dangerous condition may or may not set the stage for an accidental injury later. But in any normal use of the words, it cannot be said, if such an injury does happen, that this was deliberate infliction of harm comparable to an intentional left jab to the chin.*

*Larson's Workers' Compensation Law* § 103.03 (Rev. ed., Matthew Bender Supp. 2009) (footnotes omitted, emphasis added).

¶40    McKinnon has pled exactly what *Larson* explains is insufficient to satisfy the requirements of § 39-71-413, MCA—that Western Sugar intentionally and deliberately implemented a dangerous work condition that Western Sugar knew or should have known would eventually cause an injury.  These allegations do not contain a "specific and actual" intent to injure and are therefore insufficient as a matter of law.  Although the Court reasons

15

that "McKinnon specifically alleges that Western Sugar's conduct fit within the exception to Worker's Compensation exclusivity at § 39-71-413, MCA," this is the precise tactic we rejected in *Wise*: "Wise's attempt to characterize negligent conduct as 'intentional and deliberate' fails to bring his claim within the ambit of § 39-71-413, MCA. . . . [The alleged conduct] does not rise to the level of an intentional act specifically designed to cause an injury to Wise." *Wise*, ¶ 12 (citation omitted). This Court, like other courts, has steadfastly rejected the use of conclusory statements in a pleading in the absence of factual basis. *Cowan v. Cowan*, 2004 MT 97, ¶ 14, 321 Mont. 13, 89 P.3d 6 ("Facts must be viewed in a light most favorable to the plaintiff, however, the court is under no duty to take as true legal conclusions or allegations that have no factual basis . . . .") (citation omitted); *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1950 (2009) (Courts "are not bound to accept as true a legal conclusion couched as a factual allegation.") (citation omitted); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007) ("[A] pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.") (citation omitted).

¶41   I believe the District Court analyzed this issue correctly.

¶42   Regarding Issue 2, McKinnon filed an amended complaint on July 18, 2008, which contained constitutional challenges to the exclusivity provision. McKinnon did not contemporaneously notify the Attorney General in writing of his claim when he filed his pleading. McKinnon served the amended complaint upon Western Sugar on or around September 11, 2008. On October 1, 2008, Western Sugar moved to dismiss McKinnon's

16

constitutional claims for failure to serve the Attorney General as required by M. R. Civ. P.

24(d). McKinnon then provided written notice to the Attorney General on October 7, 2008.

¶43    M. R. Civ. P. 24(d) provides:

> When the constitutionality of any act of the Montana legislature is drawn in question in any action, suit or proceeding to which neither the state nor any agency or any officer or employee thereof, as such officer or employee, is a party, the party raising the constitutionality of the act shall notify the Montana attorney general and the court of the constitutional issue. The notice shall be in writing, shall specify the section of the code or chapter of the session law to be construed and *shall be given contemporaneously with the filing of the pleading or other document in which the constitutional issue is raised*. The attorney general may within 20 days thereafter intervene as provided in Rule 24(c) on behalf of the state.

(Emphasis added.)  Although we have not yet addressed this provision, this issue is not

one of first impression.  We interpreted former M. R. App. P. 38,[2] a rule very similar to

M. R. Civ. P. 24(d), in *Russell v. Masonic Home of Montana, Inc.*, 2006 MT 286, ¶ 20,

334 Mont. 351, 147 P.3d 216.  M. R. App. P. 38 similarly provided:

> It shall be the duty of a party who challenges the constitutionality of any act of the Montana legislature in any action, suit or proceeding in the supreme court to which neither the state nor any agency or any officer or employee thereof, as such officer or employee, is a party, to give notice to the supreme court and to the Montana attorney general of the existence of the constitutional issue. This notice shall be in writing, shall specify the section of the code or chapter of the session law to be construed and *shall be given contemporaneously with the filing of the notice of appeal or with the filing of an original proceeding in the supreme court*.

(Emphasis added.)   We held in *Russell* that the requirement of "contemporaneously"

providing notice to the Attorney General was "an essential condition precedent." *Russell*, ¶

20.  Because Russell had not "contemporaneously" notified the Attorney General of her

appeal, we concluded that M. R. App. P. 38 prohibited this Court from addressing her constitutional claims. *Russell*, ¶ 22.

¶44 Now, despite the same language as in *Russell* being at issue, and the same facts—that the litigant has failed to "contemporaneously" provide notice to the Attorney General—the Court reaches a completely different result under M. R. Civ. P. 24(d). The Court saves McKinnon's constitutional claims by reasoning that "the purpose and spirit of the rule were not violated." Opinion, ¶ 28. However, the "purpose and spirit" offered by the Court contradicts the plain wording of the rule. *See Russell*, ¶ 22; § 1-2-101, MCA ("[T]he office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted *or to omit what has been inserted*." (Emphasis added.)). The rule should be followed, or should be repealed, but it should not be ducked. Nor should our precedent.

¶45 McKinnon, like Russell, failed to "contemporaneously" provide written notice to the Attorney General of his constitutional challenge when he filed his pleading. I believe the District Court correctly analyzed this issue as well.

¶46 I would affirm.

/S/ JIM RICE

---

[2] M. R. App. P. 38 was revised and renumbered to M. R. App. P. 27. This Dissent uses the language of M. R. App. P. 38 because it was the language the Court interpreted in *Russell*.