JUSTICE RICE,
dissenting.
¶32 To state a claim under the exception to the exclusivity provision of the Workers’ Compensation Act, a complaint must allege that an employer’s or fellow employee’s intentional act caused an intentional injury. Section 39-71-413(1), MCA (2003). Additionally, in order to challenge the constitutionality of the Workers’ Compensation Act, a plaintiff must “contemporaneously” notify the Attorney General in writing of the constitutional claim, specifying the section of the code or chapter of the session law being challenged. M. R. Civ. P. 24(d) (2005). McKinnon complied with neither of these requirements. Despite that, the Court reverses both issues. I believe the District Court correctly dismissed McKinnon’s complaint, and therefore dissent.
¶33 In reviewing the District Court’s dismissal of the action, we construe the complaint in the light most favorable to the plaintiff. Wise v. CNH America, LLC, 2006 MT 194, ¶ 6, 333 Mont. 181, 142 P.3d 774. A complaint will survive a motion to dismiss only if it “put a defendant on notice of the facts that the plaintiff intends to prove; the facts must disclose the elements necessary to make the claim; and the complaint must demand judgment for relief sought by the plaintiff.” Wise, ¶ 8 (citing Kunst v. Pass, 1998 MT 71, ¶ 35, 288 Mont. 264, 957 P.2d 1).
¶34 A fundamental tenet of the Workers’ Compensation Act is the “exclusive” remedy it provides for work-related injuries. Section 39-71-411, MCA. A narrow exception to the Act’s exclusivity is provided when “an employee is intentionally injured by an intentional and deliberate act of the employee’s employer or ... a fellow employee ....” Section 39-71-413(1), MCA (emphasis added). “Intentional injury” is defined as “an injury caused by an intentional and deliberate act that is specifically and actually intended to cause injury to the employee *128 injured and there is actual knowledge that an injury is certain to occur.” Section 39-71-413(3), MCA (emphasis added). Thus, to satisfy the exception, the statute clearly requires that both the act and the resulting injury be specifically and actually intended.[1] ¶35 The Legislature’s 2001 amendment was not lost upon this Court and, in 2006, we interpreted the statute to mean what it says, holding “[i]n order to state a claim under § 39-71-413, MCA, an employee must now allege that he or she has been intentionally injured by the intentional act of an employer or fellow employee in order to avoid the exclusivity provision of the Workers’ Compensation Act.” Wise, ¶ 12 (emphasis added).
¶36 Accepting the allegations of the complaint as true, Count I fails to allege either the element of an intentional act or an intentional injury. McKinnon alleges that: (1) Western Sugar had a “duty” to protect him; (2) Western Sugar “breach[ed]” that duty by failing to provide him with the appropriate “direction, supervision, training, and equipment;” (3) Western Sugar “caused Mr. McKinnon’s injuries;” and (4) “Mr. McKinnon has sustained damages.” Thus, McKinnon alleges breach of a duty by Western Sugar which caused him damages. As the District Court correctly recognized, “without using the word negligence, McKinnon has alleged a negligence claim against Western Sugar.” See e.g. Peterson v. Eichhorn, 2008 MT 250, ¶ 23, 344 Mont. 540, 189 P.3d 615 (delineating the elements of negligence as duty, breach, cause, and damages) (citing Wilden v. Neumann, 2008 MT 236, ¶ 14, 344 Mont. 407, 189 P.3d 610; Bonilla v. U. of Mont., 2005 MT 183, ¶ 14, 328 Mont. 41, 116 P.3d 823; Massee v. Thompson, 2004 MT 121, ¶ 30, 321 Mont. 210, 90 P.3d 394). The District Court correctly dismissed Count I for failure to state a claim under § 39-71-411, MCA, precisely as we did in Wise: “[The employer’s] negligent conduct, viewed in a light most favorable to Wise, remains negligent conduct, and does not rise to the *129 level of an intentional act specifically designed to cause an injury to Wise.” Wise, ¶ 12 (citing § 39-71-413, MCA).
¶37 Count II likewise fails to state a claim for which relief may be granted. It restates the allegations of Count I and then adds the following assertions:
[McKinnon] was injured by [Western Sugar’s] intentional and deliberate act of engaging in an ongoing policy and practice of moving rail cars in an uncontrolled manner, without necessary safety equipment, when it knew or should have known that eventual severe injury to [McKinnon] was certain to occur-in that regard, a knowing or intended consequence of its intentional acts. [Western Sugar’s] conduct in this regard caused Mr. McKinnon’s injuries.
As a direct result of the injuries caused by [Western Sugar’s] conduct as described herein, Mr. McKinnon has sustained damages including past and future lost earnings and capacity; past and future medical expenses; past and future pain and suffering; past and future loss of enjoyment of life.
Taking these allegations as true, Count II asserts: (1) Western Sugar intentionally and deliberately engaged in an unsafe policy and practice of moving rail cars; (2) Western Sugar lacked appropriate safety equipment; (3) Western Sugar knew or should have known McKinnon would eventually be injured; and (4) McKinnon was injured.
¶38 Even under the lenient standards of notice pleading, McKinnon has failed to state a claim under § 39-71-413, MCA. McKinnon’s assertion that Western Sugar intentionally and deliberately “engag[ed] in an ongoing policy and practice” arguably stated an intentional and deliberate act by Western Sugar and, construing the pleading in McKinnon’s favor, I would accept it as such. However, fatal to McKinnon’s claim is his failure to allege that Western Sugar also acted with the specific and actual intention to cause the resulting injury to McKinnon. McKinnon’s complaint merely alleges that Western Sugar “knew or should have known McKinnon would eventually be injured,” which treads nowhere near a claim that his injury was “caused by an intentional and deliberate act that is specifically and actually intended to cause injury to the employee injured,” as required by § 39-71-413(3), MCA (emphasis added).
¶39 Larson’s Workers’ Compensation Law explains regarding the allegations necessary to sustain such intentional claims:
Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering *130 employees to perform an extremely dangerous job, wilfully failing to furnish a safe place to work, wilfully violating a safety statute, failing to protect employees from crime, refusing to respond to an employee’s medical needs and restrictions, or withholding information about worksite hazards, the conduct still falls short of the kind of actual intention to injure that robs the injury of accidental character.
If [the cases requiring an intent to harm as well as an intent to act] seem rather strict, one must remind oneself that what is being tested here is not the degree of gravity or depravity of the employer’s conduct, but rather the narrow issue of the intentional versus the accidental quality of the precise event producing injury. The intentional removal of a safety device or toleration of a dangerous condition may or may not set the stage for an accidental injury later. But in any normal use of the words, it cannot be said, if such an injury does happen, that this was deliberate infliction of harm comparable to an intentional left jab to the chin.
Larson’s Workers’ Compensation Law § 103.03 (Rev. ed., Matthew Bender Supp. 2009) (footnotes omitted, emphasis added).
¶40 McKinnon has pled exactly what Larson explains is insufficient to satisfy the requirements of § 39-71-413, MCA-that Western Sugar intentionally and deliberately implemented a dangerous work condition that Western Sugar knew or should have known would eventually cause an injury. These allegations do not contain a “specific and actual” intent to injure and are therefore insufficient as a matter of law. Although the Court reasons that “McKinnon specifically alleges that Western Sugar’s conduct fit within the exception to Worker’s Compensation exclusivity at § 39-71-413, MCA,” this is the precise tactic we rejected in Wise: “Wise’s attempt to characterize negligent conduct as ‘intentional and deliberate’ fails to bring his claim within the ambit of § 39-71-413, MCA.... [The alleged conduct] does not rise to the level of an intentional act specifically designed to cause an injury to Wise.” Wise, ¶ 12 (citation omitted). This Court, like other courts, has steadfastly rejected the use of conclusory statements in a pleading in the absence of factual basis. Cowan v. Cowan, 2004 MT 97, ¶ 14, 321 Mont. 13, 89 P.3d 6 (“Facts must be viewed in a light most favorable to the plaintiff, however, the court is under no duty to take as true legal conclusions or allegations that have no factual basis____”) (citation omitted); Ashcroft v. Iqbal,_U.S._, 129 S. Ct. 1937, 1950 (2009) (Courts “are not bound to accept as true a legal conclusion *131 couched as a factual allegation.”) (citation omitted); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007) (“[A] pleading must contain something more ... than... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.”) (citation omitted).
¶41 I believe the District Court analyzed this issue correctly.
¶42 Regarding Issue 2, McKinnon filed an amended complaint on July 18, 2008, which contained constitutional challenges to the exclusivity provision. McKinnon did not contemporaneously notify the Attorney General in writing of his claim when he filed his pleading. McKinnon served the amended complaint upon Western Sugar on or around September 11, 2008. On October 1, 2008, Western Sugar moved to dismiss McKinnon’s constitutional claims for failure to serve the Attorney General as required by M. R. Civ. P. 24(d). McKinnon then provided written notice to the Attorney General on October 7, 2008.
¶43 M. R. Civ. P. 24(d) provides:
When the constitutionality of any act of the Montana legislature is drawn in question in any action, suit or proceeding to which neither the state nor any agency or any officer or employee thereof, as such officer or employee, is a party, the party raising the constitutionality of the act shall notify the Montana attorney general and the court of the constitutional issue. The notice shall be in writing, shall specify the section of the code or chapter of the session law to be construed and shall be given contemporaneously with the filing of the pleading or other document in which the constitutional issue is raised. The attorney general may within 20 days thereafter intervene as provided in Rule 24(c) on behalf of the state.
(Emphasis added.) Although we have not yet addressed this provision, this issue is not one of first impression. We interpreted former M. R. App. P. 38,[2] a rule very similar to M. R. Civ. P. 24(d), in Russell v. Masonic Home of Montana, Inc., 2006 MT 286, ¶ 20, 334 Mont. 351, 147 P.3d 216. M. R. App. P. 38 similarly provided:
It shall be the duty of a party who challenges the constitutionality of any act of the Montana legislature in any action, suit or proceeding in the supreme court to which neither the state nor any agency or any officer or employee thereof, as such officer or *132 employee, is a party, to give notice to the supreme court and to the Montana attorney general of the existence of the constitutional issue. This notice shall be in writing, shall specify the section of the code or chapter of the session law to be construed and shall be given contemporaneously with the filing of the notice of appeal or with the filing of an original proceeding in the supreme court.
(Emphasis added.) We held in Russell that the requirement of “contemporaneously” providing notice to the Attorney General was “an essential condition precedent.” Russell, ¶ 20. Because Russell had not “contemporaneously” notified the Attorney General of her appeal, we concluded that M. R. App. P. 38 prohibited this Court from addressing her constitutional claims. Russell, ¶ 22.
¶44 Now, despite the same language as in Russell being at issue, and the same facts-that the litigant has failed to “contemporaneously” provide notice to the Attorney General-the Court reaches a completely different result under M. R. Civ. P. 24(d). The Court saves McKinnon’s constitutional claims by reasoning that “the purpose and spirit of the rule were not violated.” Opinion, ¶ 28. However, the “purpose and spirit” offered by the Court contradicts the plain wording of the rule. See Russell, ¶ 22; § 1-2-101, MCA (“[T]he office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.” (Emphasis added.)). The rule should be followed, or should be repealed, but it should not be ducked. Nor should our precedent.
¶45 McKinnon, like Russell, failed to “contemporaneously” provide written notice to the Attorney General of his constitutional challenge when he filed his pleading. I believe the District Court correctly analyzed this issue as well.
¶46 I would affirm.

 The requirement of specific intent for both the act and the resulting injury is a high standard, but when viewed in its historical context, was one clearly intended by the Legislature. In 1971, this Court decided Enberg v. Anaconda Co., 158 Mont. 135, 137, 489 P.2d 1036, 1037 (1971), requiring the pleading of an intentional injury in addition to an intentional act. The exclusivity statute then went through various revisions, see e.g. § 92-204, RCM (1973) and § 92-204.1, RCM (1977), before its recodification at § 39-71-413, MCA (1978). The 1978 version of the statute remained in effect until 2001, when it was revised in response to this Court’s decision in Sherner v. Conoco, Inc., 2000 MT 50, 298 Mont. 401, 995 P.2d 990, which concluded that the provision did not require an intent to cause the resulting injury. See Sherner, ¶¶ 38-39. In response, the Legislature amended the statute to require a specific intent for both the act and the resulting injury. SB 323, 57th Leg., Reg. Sess. (Apr. 12, 2001).

 M.R.App.P. 38 was revised and renumbered to M.R.App.P. 27. This Dissent uses the language of M.R.App.P. 38 because it was the language the Court interpreted in Russell.